

INTERACTIVE BROKERS LLC,

     Plaintiff,

v.                         Civil Action No. 3:17-cv-127

ROHIT SAROOP, PREYA SAROOP,
and GEORGE SOFIS,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the PLAINTIFF'S MOTION TO VACATE MODIFIED ARBITRATION AWARD (ECF No. 79) and DEFENDANT'S MOTION TO CONFIRM THE MODIFIED ARBITRATION AWARD (ECF No. 80). For the reasons set forth below, the PLAINTIFF'S MOTION TO VACATE MODIFIED ARBITRATION AWARD (ECF No. 79) will be granted and the DEFENDANT'S MOTION TO CONFIRM THE MODIFIED ARBITRATION AWARD (ECF No. 80) will be denied. Further, the Court will remand the matter to a new panel of arbitrators to consider the Plaintiff's counterclaims.

## BACKGROUND

This matter is a familiar one to the Court. In January 2017, a Financial Industry Regulatory Authority ("FINRA") arbitration panel rendered an arbitration award (the "first arbitration decision") in favor of Claimants George Sofis and Rohit and Preya Saroop ("Claimants") and against Interactive Brokers, LLC

("Interactive") (ECF No. 1-2). Interactive moved to vacate that award (ECF No. 1) and Claimants moved to confirm it (ECF No. 18). Faced with an inscrutable award, this Court remanded the first arbitration decision back to the same panel of arbitrators for clarification.[1] ECF No. 50 (hereinafter, the "Remand Opinion"). Fully aware of the Court's instructions in the Remand Opinion, the arbitrators issued a modified award (the "second arbitration decision") in January 2018, again in favor of the Claimants. ECF No. 71-1. Once again, Interactive moved to vacate the award (ECF No. 79) and Claimants moved to confirm it (ECF No. 80).

## A.    Factual Background

The factual background is set out fully in the Remand Opinion (ECF No. 50) and is incorporated here.

Interactive is an online brokerage firm that provides a web-based platform for sophisticated investors to purchase and sell securities and other products on various exchanges throughout the world. ECF No. 1 at 6. Interactive offers these services to its customers without any accompanying financial advice.   It merely executes the trades that its customers (or its customers' own investment advisors) request.  Id.  Consequently, Interactive's

---

[1] Claimants appealed the Court's remand to the Arbitrators (ECF No. 55); the Fourth Circuit dismissed the appeal on the grounds that it was a non-appealable interlocutory order. ECF No. 67.

contracts with its customers include, among other things,[2] waivers of liability for any and all losses sustained through the market. ECF No. 1-3, 1-4. The Claimants in this case were three such customers.

The Saroops opened an account with Interactive on June 18, 2012 with an initial deposit of $25,000. They deposited an additional $75,000 in 2013, and another $50,000 in 2014. Sofis opened his account with Interactive on October 15, 2012 with a deposit of $100,000. Both the Saroops and Sofis hired an independent financial advisor, Vikas Brar of Brar Capital LLC, to run their accounts with Interactive and to make trades on their behalf. The parties appear to agree that neither Brar nor his company has ever been employed by or affiliated with Interactive, and that the decision to hire Brar was made solely by the Claimants themselves.

Over the course of their contractual relationship with Interactive, the Claimants (through Brar) engaged in a high-risk trading strategy that relied on the sale of so called "naked short

---

[2] Of particular relevance to these proceedings, the contracts also included: (1) a mandatory arbitration provision; (2) a choice of law provision stating that Connecticut law governs contract interpretation; (3) and an attorneys' fee provision that purports to give Interactive (only) the right to fees.

call" options[3] and "margin" trading.[4] These strategies initially resulted in large profits for the Claimants, but that changed in 2015.

On January 15, 2015, at Brar's request, the Saroops converted their account with Interactive from a Regulation T[5] margin account to a portfolio margin account. Sofis did the same in July of 2015. This change in account type allowed Brar to engage in still riskier transactions on behalf of the Claimants: under Regulation T's margin requirements, investors may borrow up to fifty percent of the purchase price of a security using a loan from the broker;

---

[3] A call option is the option to buy some underlying security (such as the Exchange Traded Notes ("ETNs") at issue in this case) at a predetermined "strike price" up until some future date. If the value of the underlying security never hits the "strike price," the option is worthless and the seller pockets the premium from the sale of the option. Because this is a risky strategy, investors often hedge their position by buying the underlying security involved in the transaction, thereby limiting their risk (and reward). When an investor sells such an option without owning the underlying security (thereby exposing him or herself to higher risk), it is called a "naked" short call.

[4] Essentially, trading on the "margin" refers to a method of buying securities (or stock, etc.) that involves borrowing a part of the sum needed to execute the transaction from the broker himself— here, Brar. Margin trading may result in quicker profits, but it also exposes the investor to the risk of losses in excess of the amount of their initial investment.

[5] 12 C.F.R. § 220.

under Portfolio Margin, investors can (usually) achieve far greater leverage.[6]

By the time the Claimants' accounts were converted to portfolio margin accounts in 2015, Brar was exclusively (or nearly exclusively) relying on a strategy of selling naked call options of iPath S&P 500 VIX Short-Term Futures (VXX), an exchange traded note ("ETN") designed to give investors exposure to the so-called "fear index." In doing so, Brar was essentially betting (on behalf of the Claimants) that the market would remain stable. Brar continued to rely upon and execute these trades after the Claimants converted their accounts to portfolio margin.

The parties dispute whether, and to what extent, FINRA Regulations (specifically, Rule 4210 and regulatory notice 08-09) permitted such trades to be executed using the portfolio margin. It is undisputed, however, that such trades were executed using the portfolio margin, and that they resulted in profits for the Claimants until late August of 2015.[7] Indeed, by the close of

---

[6] Unlike Regulation T's initial margin requirement of 50% (2-1 leverage limit on equity), Portfolio Margin uses a sophisticated algorithm to calculate margin requirements based on the overall hypothetical risk of the portfolio (which, in turn, factors in the historical volatility of the underlying securities involved).

[7] It is clear from the "Arbitrator's Report" in both the first arbitration decision (ECF No. 1-2) and the second arbitration decision (ECF No. 71-1) that the arbitrators concluded that the VXX options were not eligible to be traded using portfolio margin.

markets on August 19, 2015, Sofis' account had a net asset value ("NAV") of $500,529.48 and the Saroops had a NAV of $520,450.40.

On Thursday, August 20, 2015, Brar continued this same strategy, selling hundreds of naked VXX call options. Over the next several days, however, the market experienced a spike in volatility, culminating on August 24, 2015, when the Dow experienced the largest one-day decline in its history. The parties dispute the cause of this volatility and decline: while Interactive attributes the loss to the market generally, the Claimants argue that the losses occurred, at least in part, because of the unreasonable "auto-liquidation" procedures deployed by Interactive.

Notwithstanding this factual dispute, both sides agree that by the time the market opened on August 24, the value of the Claimants' accounts had decreased by 80 percent. This precipitous drop caused the Claimants' accounts to fall into so-called "margin deficiency"–the equity remaining in the accounts had fallen below the minimum maintenance requirements. This margin deficiency, in turn, triggered Interactive's "auto-liquidation" procedures, which, in a period of about thirty minutes, wiped out the remaining balance in the Claimants' accounts (and left them with a still-large margin deficiency). The Claimants responded by bringing an arbitration claim against Interactive.

## B. The First Arbitration Decision

In December 2015, the Claimants filed an arbitration claim with FINRA, as required by their contracts with Interactive. Their Statement of Claim ("SC") asserted multiple claims, including: breach of contract, promissory estoppel, violation of state securities statutes, commercially unreasonable disposition of collateral, negligent and intentional misrepresentation, unjust enrichment, and vicarious liability. SC ¶¶ 46-61 (ECF No. 1-10). Interactive filed an answer and counterclaim in response, seeking an award equal to the amount of the Claimants' debt remaining after their accounts had been liquidated. ECF No. 1-11. Both sides also sought attorneys' fees, and signed FINRA Uniform Submission Agreements, in which they agreed to submit the matters pled in the Statement of Claim, answer, and counterclaims for resolution by a FINRA arbitration panel (ECF No. 1-12). Although they had a right to do so under FINRA rules, neither side requested a reasoned award from the arbitrators.

An arbitration hearing was held from December 5, 2016 to December 9, 2016. Both sides presented fact and opinion testimony, including experts. Ultimately, on January 10, 2017, the panel rendered a monetary award in favor of the Claimants, including an award of attorneys' fees and a denial of Interactive's counterclaim. ECF No. 1-2. The arbitrators summarized the claims in the case as follows:

Claimants asserted the following causes of action:
breach of contract and promissory estoppel, violation of
state securities statutes, commercially unreasonable
disposition of collateral, vicarious liability, and
common law fraud. The causes of action relate to
unspecified securities.

Unless specifically admitted in the Statement of Answer,
Respondent denied the allegations made in the Statement
of Claim and asserted various affirmative defenses.

In its Counterclaim, Respondent asserted the following
causes of action: failure to mitigate and pay a debt.

Id. at 3. The panel also noted that the Claimants withdrew their

claim for allowing a non-registered broker to make trades at the

close of the arbitration hearing. Id.

Because neither side requested a reasoned award, the

arbitrators provided little explanation for their decision. The

"Arbitrator's Report" consists of just three sentences, followed

by details of the monies owed. In their entirety, the "ARBITRATOR'S

REPORT" and "AWARD" state:

### ARBITRATOR'S REPORT

The Claimants are awarded the value of their accounts on
August 19, 2015 ($520,450.40 to the Saroops and
$500,529.48 to Sofis). Respondent's Counterclaim was
dismissed based on Respondent's violation of FINRA Rule
4210 as further explained in regulatory notice 08-09.
The securities placed in the portfolio margin account
were not eligible for that account based on these rules
and regulations.

### AWARD

After considering the pleadings, the testimony and
evidence presented at the hearing, and the post-hearing
submissions, the Panel has decided in full and final

resolution of the issues submitted for determination as follows:

1. Respondent is liable for and shall pay to Claimants Rohit and Preya Saroop compensatory damages in the amount of $520,450.40 plus interest at the rate of 8% per annum from 30 days of the date of the award until payment.

2. Respondent is liable for and shall pay to Claimants Rohit and Preya Saroop attorneys' fees representing 40% of the compensatory damages and 30% of the net claimed by Respondent for a total of $274,006.16. The Panel granted attorneys' fees pursuant to the parties' agreement.

3. Respondent is liable for and shall pay to Claimant George Sofis compensatory damages in the amount of $500,529.48 plus interest at the rate of 8% per annum from 30 days of the date of the award until payment.

4. Respondent is liable for and shall pay to Claimant George Sofis attorneys' fees representing 40% of the compensatory damages and 30% of the net claimed by Respondent for a total of $249,858.49. The Panel granted attorneys' fees pursuant to the parties' agreement.

5. Claimants' claim for witness fees is denied.

6. Respondent is liable for and shall pay to Claimants $600.00 as reimbursement of the non-refundable portion of the filing fee previously paid.

7. Respondent's Counterclaims are denied in their entirety.

8. Respondent's request for attorneys' fees is denied.

9. Any and all claims for relief not specifically addressed herein, including punitive damages, are denied.

Id. at 4. The remainder of the decision contained non-relevant

information on arbitration fees. Id. at 5. Interactive moved for

this Court to vacate the first arbitration decision (ECF No. 1), while the Claimants sought to confirm it (ECF No. 18).

## C.   The Remand Opinion (ECF No. 50)

After considering the parties' motions to confirm and vacate the first arbitration decision, the Court did neither. Rather, it denied both motions, and remanded the matter to the original arbitrators to clarify their opinion. ECF No. 50.

The Court recognized the extreme deference owed to arbitrators' decisions. Id. at 11-14. However, it also noted that "[w]hen an arbitrator does provide reasons for a decision and when those reasons are so ambiguous as to make it impossible for a reviewing court to decide whether an award draws its essence from the agreement, the court may remand the case to the arbitrator for clarification." Cannelton Indus., Inc. v. Dist. 17, United Mine Workers of Am., 951 F.2d 591, 594 (4th Cir. 1991); ECF No. 50 at 14. The Court found the first arbitration decision to be a situation where remand was warranted.

First, the Court could not "concoct a scenario where the amount of compensatory damages awarded in this case makes sense." ECF No. 50 at 16. Nor could the Court determine what the arbitrators considered to be the predicate for liability. Id. The first arbitration decision was especially perplexing because it stated that "[a]ny and all claims for relief not specifically addressed herein, including punitive damages, are denied." ECF

No. 1-2 at 4. But, the award was in no way clear about which claims had been "specifically addressed." ECF No. 50 at 17. Further still, the damages awarded to the Claimants did "not correspond to any theory of liability that the Court can apprehend, much less the two principal theories of liability articulated by the Claimants at the arbitration."[8] Id. at 17.

Second, the award of attorney's fees was also quite perplexing. Id. at 19. The Court found a possible legal basis for the award of such fees (in the parties' agreement), but nothing supported a finding of percentage fees. Id. Accordingly, the Court concluded that the fee awarded also needed to be clarified.

In sum, the Court simply could not reconcile the first arbitration decision with any legal theories with which it was familiar. The Court refused to rubber stamp a decision it could not understand. Id. While "the arbitrators need not give a full opinion, a brief explanation for the basis of the amount of damages awarded is necessary before any semblance of judicial review can be accomplished." Id. at 20. Accordingly, the Court remanded the matter to the same panel of arbitrators for clarification as to the predicate for liability, how the damages were determined, and the basis for attorney's fees. Id. at 19-20.

---

[8] These two theories were: (1) Interactive's allowance of ineligible securities to be traded on portfolio margin, and (2) Interactive's auto-liquidation procedure. ECF No. 50 at 17-18.

**D.    The Second Arbitration Decision**

The arbitrators issued their second, modified decision on January 30, 2018. ECF No. 71-1. The modified decision only added a few sentences to the first arbitration decision. As far as explanations go, it was not very helpful.

Nearly identically to the first arbitration decision, the arbitrators summarized the case as follows (the new text is underscored):

> Claimants asserted the following causes of action: breach of contract and promissory estoppel, violation of state securities statutes, declaratory judgment, commercially unreasonable disposition of collateral, vicarious liability, and common law fraud. The causes of action relate to unspecified securities.
>
> Unless specifically admitted in the Statement of Answer, Respondent denied the allegations made in the Statement of Claim and asserted various affirmative defenses.
>
> In its Counterclaim, Respondent asserted the following causes of action: failure to mitigate and pay a debt.

Id. at 3. This list added "declaratory judgment" from the first arbitration decision. See ECF No. 1-2 at 2. Under "OTHER ISSUES CONSIDERED AND DECIDED," the arbitrators added a paragraph explaining the procedural history of the case, concluding with: "After due consideration, the Panel submits this Modified Award." ECF No. 71-1 at 3.

The next two sections of the second arbitration decision are the "ARBITRATOR'S REPORT" and "AWARD." Those sections repeat much

12

of the first decision and then add some text. In their entirety, those sections state as follows (with additions to the first arbitration decision underscored):

### ARBITRATOR'S REPORT

The Claimants are awarded the value of their accounts on August 19, 2015 ($520,450.40 to the Saroops and $500,529.48 to Sofis). Respondent's Counterclaim was dismissed based on Respondent's violation of FINRA Rule 4210 as further explained in regulatory notice 08-09. The securities placed in the portfolio margin account were not eligible for that account based on these rules and regulations. _Respondent's position that the Panel should not enforce a FINRA rule amounts to saying that FINRA should provide an opportunity for investors to commit financial suicide by investing in securities that are ineligible for inclusion in a portfolio margin account. To ignore a FINRA rule by the Panel would defeat the purpose of FINRA._

### AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondent is liable for and shall pay to Claimants Rohit and Preya Saroop compensatory damages in the amount of $520,450.40 plus interest at the rate of 8% per annum from 30 days of the date of the award until payment.

2. Respondent is liable for and shall pay to Claimants Rohit and Preya Saroop attorneys' fees representing 40% of the compensatory damages and 30% of the net claimed by Respondent for a total of $274,006.16. The Panel granted attorneys' fees pursuant to the parties' agreement.

3. Respondent is liable for and shall pay to Claimant George Sofis compensatory damages in the amount of

$500,529.48 plus interest at the rate of 8% per annum from 30 days of the date of the award until payment.

4. Respondent is liable for and shall pay to Claimant George Sofis attorneys' fees representing 40% of the compensatory damages and 30% of the net claimed by Respondent for a total of $249,858.49. The Panel granted attorneys' fees pursuant to the parties' agreement.

5. There was no evidence of profits or losses in securities ineligible for portfolio management accounts from the time that the parties signed the portfolio management agreements and the parties' accounts' net asset values, all cash on August 19, 2015. Therefore, the panel could not consider what happened prior to the investment of cash on August 19, 2015 in the portfolio management accounts.

The damages set forth above stem from the amounts, all cash, on August 19, 2015, which were subsequently invested in securities that were ineligible for investment in portfolio margin accounts. Values were determined from Claimants' Exhibits 70 and 71 and Respondent's Exhibits R-48 and R115.

Counsel fees were based on an agreement between the attorneys for both parties. There was a dispute as to whether the agreement was cancelled. The Panel found for the Claimants. The amounts were based on a written fee agreement between the counsel and each party. Percentages and fees were obtained from Claimants' Exhibits 53 and 63 and Respondent's Exhibit R-49.

6. Claimants' claim for witness fees is denied.

7. Respondent is liable for and shall pay to Claimants $600.00 as reimbursement of the non-refundable portion of the filing fee previously paid.

8. Respondent's Counterclaims are denied in their entirety.

9. Respondent's request for attorneys' fees is denied.

10. Any and all claims for relief not specifically addressed herein, including punitive damages, are denied.

ECF No. 71-1 at 4-5 (new text underscored). Again, the remainder of the arbitrator's decision dealt with non-relevant filing fees. Id. at 5-6.

In sum, the second arbitration decision added "declaratory judgment" as one of the causes of action asserted by the Claimants; it added a brief procedural history of the case leading to the second, modified award; it added two sentences to the "Arbitrator's Report" regarding FINRA rules; and it added Paragraph Five of the "Award" explaining the calculation of damages.

**E.  Procedural Posture**

Following the second arbitration decision, Interactive filed PLAINTIFF'S MOTION TO VACATE MODIFIED ARBITRATION AWARD (ECF No. 79) on March 26, 2018; Claimants filed DEFENDANT'S MOTION TO CONFIRM THE MODIFIED ARBITRATION AWARD on the same day (ECF No. 80). The parties briefed the matter fully (ECF Nos. 81-85; 89; 91). Thereafter, the Court heard oral argument, and both motions were fully submitted to the Court. The matter is now ripe for decision.

**LEGAL STANDARD**

Section 10 of the Federal Arbitration Act sets out the specific, limited grounds upon which an arbitral award may be vacated. They include:

> (1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Supreme Court has issued further instructions interpreting the fourth of these circumstances: where arbitrators exceed their powers.

In Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064 (2013), the Supreme Court explained that "a party seeking relief under § 10(a)(4) bears a heavy burden." Id. at 2068. The Court instructed further:

It is not enough . . . to show that the arbitrator committed an error—or even a serious error. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits. Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of [economic] justice rather than drawing its essence from the contract—may a court overturn his determination. So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

Id. at 2068 (internal citations and quotations omitted).

The Fourth Circuit has explained that an arbitration award may be vacated on common law grounds where it "fails to draw its essence from the contract," or where the award demonstrates a "manifest disregard of the law." See Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC, 519 F.3d 200, 207 (4th Cir. 2008). An award fails to draw its essence from the contract "when an arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong." Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 528 (4th Cir. 2007).

Manifest disregard of the law requires the moving party to show that the arbitrator was "aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision." Long John Silver's Restaurants, Inc. v. Cole, 514 F.3d 345, 349 (4th Cir. 2008). This standard is "not an invitation to review the merits of the underlying arbitration," and will apply only where: "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." Jones v. Dancel, 792 F.3d 395, 402-03 (4th Cir. 2015), cert. denied, 136 S. Ct. 591 (2015). A district court cannot overturn an arbitration award "just because it believes, however strongly, that the arbitrators misinterpreted the applicable law."

_Id._ at 401 (quoting <u>Wachovia Sec., LLC v. Brand</u>, 671 F.3d 472, 478 (4th Cir. 2012)). The arbitrators must disregard it.

Notwithstanding these possible grounds for vacatur, the Fourth Circuit has repeatedly emphasized that "judicial review of an arbitration award in federal court is severely circumscribed." _Id._ (quoting <u>Apex Plumbing Supply, Inc. v. U.S. Supply Co.</u>, 142 F.3d 188, 193 (4th Cir. 1998)). Indeed, the Fourth Circuit has described such review as "among the narrowest known at law," <u>Apex</u>, 142 F.3d at 193, and has instructed that "a court sits to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." <u>Wachovia</u>, 671 F.3d at 478 (internal citations omitted). Thus, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." <u>Choice Hotels</u>, 519 F.3d at 207 (quoting <u>U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO</u>, 204 F.3d 523, 527 (4th Cir. 2000)).

In sum, this Court "'must' confirm an arbitration award 'unless' a party to the arbitration demonstrates that the award should be vacated under" one of the permissible grounds, which includes manifest disregard of the law. <u>Dancel</u>, 792 F.3d at 401 (quoting <u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 582 (2008)).

## DISCUSSION

With this framework in mind, the Court moves to the merits of the case, fully aware of its limited role in reviewing the arbitration decision. Still, the arbitration decision must comport with the law. After thoroughly reviewing the record in this case—especially in light of the specific instructions that the Court gave the arbitrators in the Remand Opinion—the Court concludes that the arbitrators based their finding of liability against Interactive on a violation of FINRA Rule 4210. That is a manifest disregard of the law because the law is clear that there is no private right of action to enforce FINRA rules; the arbitrators knew of and understood the law on this point; they found it to be applicable to the case; and they ignored it. When such manifest disregard for the law occurs, the Court must vacate the arbitration award. Because the arbitrator's impermissible finding of liability is the basis for the damages and attorney's fees award against Interactive, those findings are also erroneous. Accordingly, the Court will only deal with the liability issue here. Lastly, because the arbitrators dismissed Interactive's counterclaims based on the alleged violation of FINRA Rule 4210, the Court will reinstate those claims and remand to a new panel of arbitrators for consideration thereof.

**A.  The Arbitrators' Liability Determination is Predicated on a Violation of FINRA Rule 4210**

The arbitrators' second arbitration decision does not expressly state that it is basing its liability finding against Interactive on any of the causes of action recited in the award. The decision starts with a list of the causes of actions asserted by the Claimants—breach of contract and promissory estoppel, violation of state securities statutes, declaratory judgment, commercially unreasonable disposition of collateral, vicarious liability, and common law fraud. ECF No. 71-1 at 3. These causes of action "relate to unspecified securities." Id.[9]

After identifying those potential causes of action, the "ARBITRATOR'S REPORT" makes a finding of liability against Interactive without stating which cause of action serves as the basis for such liability or how damages were determined.  Indeed, the "REPORT" does not identify any of the specified causes of action delineated on the previous page of the decision as the predicate for the award.  More importantly, the only basis for liability cited by the arbitrators in their modified award—after they were specifically instructed by the Court to provide an

---

[9] The arbitrators then state that in Claimants' "Statement of Claim" they requested: compensatory damages, direct or consequential damages, market adjusted damages and/or punitive damages, interest, lost opportunity damages, rescission, statutory damages, costs, legal fees, and any and all other relief available. Id.

explanation for the predicate for liability—is a violation of FINRA Rule 4210.

In the first arbitration decision, the "ARBITRATOR'S REPORT" stated that Interactive's counterclaims were dismissed "based on" Interactive's "violation of FINRA Rule 4210" and that the "securities placed in the portfolio margin account were not eligible for that account based on these rules and regulations." ECF No. 1-2 at 4 (emphasis added). In the second arbitration decision, the arbitrators appear to double down on their reliance of a FINRA rule violation as the basis for liability by adding the following two sentences—and only these sentences—to the "REPORT":

> Respondent's position that the Panel should not enforce a FINRA rule amounts to saying that FINRA should provide an opportunity for investors to commit financial suicide by investing in securities that are ineligible for inclusion in a portfolio margin account. To ignore a FINRA rule by the Panel would defeat the purpose of FINRA.

ECF No. 71-1 at 4. This is the only explanation in the modified "ARBITRATOR'S REPORT" that relates to the predicate for liability.[10]

---

[10] In the modified "AWARD," where the arbitrators attempt to explain the damages calculation, they also appear to double-down on a FINRA rule violation: "The damages set forth above stem from the amounts . . . which were subsequently invested in securities that were ineligible for investment in portfolio margin accounts." ECF No. 71-1 at 4 ¶ 5.

Further support for that conclusion is found in the final paragraph of the "AWARD," where the arbitrators write: "Any and all claims for relief not specifically addressed herein, including punitive damages, are denied." Id. at 5 ¶ 10. In the Remand Opinion (ECF No. 50), the Court noted that the first arbitration decision's use of this identical language was unclear: "[O]ne cannot discern from the Arbitrator's Report or the Award which claims for relief were, as the arbitrator put it, 'specifically addressed.'" ECF No. 50 at 17. Instead of following the Court's instruction to clarify the predicate for liability, however, the arbitrators used the same "specifically addressed" language and added language about FINRA rule violations. By process of elimination, if all other claims were rejected (by the arbitrators' express admission) and the only language added to the "ARBITRATOR'S REPORT" indicates that liability is predicated on a FINRA Rule 4210 violation, it is hard for the Court to conclude anything other than that a violation of FINRA Rule 4210 is the basis for liability here.[11]

_____

[11] In the DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO VACATE THE MODIFIED ARBITRATION AWARD (ECF No. 85), the Claimants concede that commercially unreasonable disposition of collateral, vicarious liability, and declaratory judgment were likely not the basis for liability here. ECF No. 85 at 12. Accordingly, Claimants assert that breach of contract and promissory estoppel, violation of state securities statutes, and common law fraud remain as bases for the arbitrator's finding of liability. Id.; see also Oral Arg. Tr. at 45 (ECF No. 94). However, on its face, the arbitration decision makes clear that liability is predicated on a violation of FINRA Rule 4210.

The arbitrators were on notice that the Court was perplexed by the "specifically addressed" language and to the extent they clarified their award, they have made it clear that they "specifically addressed" FINRA Rule 4210.

**B.    The Arbitrators' Award Manifestly Disregards the Law in Relying on FINRA Rule 4210 as the Predicate for Liability**

It is a manifest disregard of the law to predicate liability on a violation of FINRA Rule 4210. Accordingly, the arbitration award cannot stand.

Distilling the Fourth's Circuit's "manifest disregard" cases, the Court uses the following framework to assess this issue. First, the legal principle must be "clearly defined and. . .not subject to reasonable debate." Dancel, 792 F.3d at 402. Second, the arbitrators must have: (1) been aware of this clearly defined law, (2) understood that law correctly, (3) found that law applicable to the case before them, and (4) ignored that law in coming to a decision. See Long John Silver's, 514 F.3d at 349. Each of these elements has been met in this case.

**1. The Law Is Clearly Defined That There Is No Private Right of Action Under FINRA Rules**

The clear weight of authority holds that a violation of the rules of a financial self-regulatory entity like FINRA (or its

predecessor, NASD)[12] does not give rise to a private right of action. More than 40 years ago, the Fourth Circuit considered whether New York Stock Exchange ("NYSE") Rules or American Stock Exchange ("ASE") Rules governing margin maintenance requirements created a private right of action for an investor. Carras v. Burns, 516 F.2d 251, 260 (4th Cir. 1975). The Court of Appeals found that, because "[m]argin maintenance requirements are established primarily to protect the solvency of brokers by assuring adequate collateral for their loans that finance consumer speculation," these requirements standing alone "create no cause of action" for the investor. Id. While Carras did not deal with FINRA rules, it did deal with margin requirements like those in this case and those in FINRA Rule 4210. The Court does not discern a material difference between violations of the NYSE or ASE margin rules in Carras and FINRA Rule 4210 here. See also Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 603 F.2d 1073 (4th Cir. 1979) (finding no private right of action to enforce Regulation T credit rules).

Other cases cited by Interactive in its briefing both to the Court and to the arbitrators further establish that there is no private right of action to enforce FINRA or NASD rules. For

---

[12] FINRA succeeded NASD in 2007. See Santos-Buch v. Fin. Indus. Regulatory Auth., Inc., 591 Fed. Appx. 32 (2d Cir. 2015) (unpublished).

example, in <u>Weinraub v. Glen Rauch Secs., Inc.</u>, the Court rejected Weinraub's securities fraud allegations on several grounds, including that he could not "state a valid cause of action based on violations of [NYSE] and NASD rules and guidelines, as these rules confer no private right of action." 399 F. Supp. 2d 454, 462 (S.D.N.Y. 2005) (footnotes omitted). <u>See also</u> <u>Thompson v. Smith Barney, Harris Upham & Co., Inc.</u>, 709 F.2d 1413, 1419 (11th Cir. 1983) (rejecting contention that there is private right of action under federal securities laws for violation of NYSE and NASD Rules); <u>SSH Co., Ltd. v. Shearson Lehman Bros. Inc.</u>, 678 F. Supp. 1055, 1058 (S.D.N.Y. 1987) (same); <u>Parsons v. Hornblower & Weeks-Hemphill Noyes</u>, 447 F. Supp. 482, 494 (M.D.N.C. 1977) ("Under the clear weight of authority, there is no private right of action for alleged violations of NASD rules in the absence of facts which demonstrate fraud, independently cognizable under the antifraud provisions of the securities laws.").

In a Notice of Supplemental Authority (ECF No. 89), Interactive also cites to a recent Southern District of New York case, <u>Hauptman et al. v. Interactive Brokers, LLC</u>, No. 1:17-cv-09382-GBD (S.D.N.Y. June 12, 2018).[13] The Court stated unequivocally that "no private right of action exist[s] . . . for

---

[13] Interactive also provided a more recent opinion in <u>Hauptman</u>, No. 1:17-cv-09382-GBD (S.D.N.Y. Oct. 19, 2018), that denied the Plaintiffs' Motion to Amend based on the futility of such an amendment. ECF No. 91.

violations of. . .FINRA rules." Hauptman, slip op. at 15 (quoting Lobaito v. FINRA, No. 13-cv-6011, 2014 WL 4470423, at *7 n.3 (S.D.N.Y. Sept. 9, 2014)). Hauptman was decided after the arbitrators decided this case, so it cannot serve as a basis to establish that the law was clearly defined on this issue when the arbitrators had this matter before them. Hauptman quotes the earlier Lobaito case, which pre-dated the arbitration in this case, and thus could establish this principle of law. Lobaito, however, was discussing whether there was a private right of action against FINRA for actions it takes "in furtherance of its regulatory duties, including enforcement of its own rules." Lobaito, 2014 WL 4470423, at *7 & n.3. Private rights of action against FINRA are not at issue in the instant case.

Nonetheless, Hauptman also cites to Gurfein v. Ameritrade, Inc., discussed infra. In Gurfein, the Second Circuit taught that there is no private right of action under the rules of organizations like FINRA. 312 Fed. Appx. 410, 414 (2d Cir. 2009) (stating that "Gurfein does not contend that the regulatory rules themselves provide investors with a private right of action" and "Gurfein is precluded from creating a private cause of action for violations of these rules and regulations by fashioning her claim as one for breach of contract"). Thus, even leaving Lobaito and Hauptman aside, it is clear that the Second Circuit understood there was no private right of action under rules of entities like

FINRA. Further, the Court has not found—nor have the Claimants provided—any case that holds that there is a private right of action to enforce violations of FINRA rules. Accordingly, the Court considers that question—whether there is a private right of action to enforce FINRA rules—to be beyond dispute.[14]

Undeterred, Claimants also attempt to make the more nuanced argument that a violation of FINRA rules can provide the basis for a common law claim. To that end, they argue that a violation of FINRA rules could have supported a finding by the arbitrators that Interactive violated one of the common law causes of action. See, e.g., ECF No. 85 at 13-14. By making this argument, the Claimants concede that the arbitrators were relying on a violation of FINRA Rule 4210 to establish liability, but were doing so to establish one of the common law claims.

Claimants also cite several cases that they think support their theory. Those cases, however, are about using FINRA rules to define the scope of a common law duty—or to provide evidence of whether that duty was met—not about establishing the predicate for liability in the first place.

In <u>Rioseco v. GAMCO Asset Mgmt.</u>, a New York state trial court decision, the court considered whether FINRA rules (there, the so-

---

[14] Counsel for the Claimants conceded this point at oral argument, answering "no" when directly asked by the Court if there were any cases holding that there is a private right of action to enforce FINRA rules. Oral Arg. Tr. at 28 (ECF No. 94).

called "suitability rules") could "be considered as evidence of industry standards for purposes of a common law <u>malpractice claim</u>." No. 15862/10, Seq. No. 003, 2011 WL 4552544, at *79 (N.Y. Sup. Ct. Sept. 23, 2011) (emphasis added). The <u>Rioseco</u> court noted that a violation of FINRA rules does not give rise to a private cause of action. <u>Id.</u> However, since the court had already determined that GAMCO owed fiduciary duties to Rioseco, the violation of the FINRA rules could be probative of "whether GAMCO committed malpractice." <u>Id.</u> at *80.

The <u>Rioseco</u> court understood the difference between FINRA rules creating a private cause of action and their informing the scope of existing causes of action and common law duties. If a FINRA rule "gave rise to a private right of action, the violation of the rule, standing alone, would be sufficient to impose liability." <u>Id.</u> at *79. There is no private right of action under FINRA rules, but the <u>Rioseco</u> court found that the rules could provide evidence of whether there was malpractice once it established that GAMCO owed a fiduciary duty. In the instant case, the Court cannot ascertain which common law cause of action that a FINRA rule violation could inform. The arbitrators state that they are denying "any and all claims for relief not specifically addressed herein," yet only address a violation of FINRA rules. ECF No. 71-1 at 4-5. That implies that the basis for liability is a FINRA rule violation. Accordingly, <u>Rioseco</u> is not on point.

The same analysis holds true for other cases cited by the Claimants. Those cases all deal with using a violation of FINRA or NASD rules to provide evidence of a violation of an existing common law cause of action, like negligence. They do not use the FINRA or NASD rule violation as an independent cause of action as the arbitrators did here. See Milliner v. Mut. Secs., Inc., 297 F. Supp. 3d 1060, 1065 (N.D. Cal. 2016) ("[C]ourts have often looked to such rules in defining the scope of common law duties."); Walnut St. Secs. v. Lisk, 497 F. Supp. 2d 714, 719-720 (M.D.N.C. 2007) (violation of NASD rules could be basis for failure to supervise liability); Scott v. Dime Sav. Bank of New York, FSB, 886 F. Supp. 1073, 1080-81 (S.D.N.Y. 1995) (jury could have considered evidence of NASD rule violation in determining negligence); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng, 697 F. Supp. 1224, 1227 (D.D.C. 1988) (violation of NASD rule may be considered by jury in determining negligence). These cases make clear that violating a FINRA or NASD rule can be considered in defining the scope of a common law duty. But here, the arbitrators state that they are rejecting all claims not specifically addressed and only address the FINRA rule violation. There, thus, is no common law claim upon which they could have based the finding of liability.

Further still, recent Second Circuit case law holds that an investor may not create a private right of action for the violation of financial regulatory rules, including NASD rules, by

refashioning his claim as a breach of contract claim. <u>Gurfein v. Ameritrade, Inc.</u>, 312 Fed. Appx. 410, 412-14 (2d Cir. 2009). In <u>Gurfein</u>, the plaintiff's Customer Agreement with her online financial brokerage firm stated that "[a]ll transactions under this Agreement are made subject to the constitution, rules, regulations, customs and usages of the various execution points and their clearinghouse, if any." <u>Id.</u> at 413. The Second Circuit determined that such a clause "is a notice provision that informs the customer that her trades are constrained by the rules of governing regulatory agencies" and did not "impose[] [contractual] obligations" on the broker-dealer. <u>Id.</u> at 413-14. Gurfein could not "creat[e] a private cause of action for violations of [financial regulatory] rules and regulations by fashioning her claim as one for breach of contract based on violations of rules and regulations impliedly incorporated into the agreement." <u>Id.</u> at 414.

Like <u>Gurfein</u>, this case involves a Customer Agreement that acknowledges that "[a]ll transactions are subject to rules and policies of relevant markets and clearinghouses, and applicable laws and regulations." Interactive Brokers LLC Customer Agreement ¶ 6 (ECF No. 1-4). And, like <u>Gurfein</u>, this provision puts the customer on notice about how his trades will be governed. But, as the Second Circuit has made clear, it does not create a private

cause of action for violation of financial regulatory rules and regulations under a breach of contract theory.

The Court is satisfied that the law is clearly defined that there is no private right of action to enforce FINRA rules. Because it is apparent on the face of the arbitrator's decision that a violation of FINRA Rule 4210 is the basis for liability in this case, that is the end of the matter. Claimants' argument that FINRA or NASD rules can provide evidence to support a common law cause of action presupposes that one exists. Where the arbitrators state that they are rejecting all claims not specifically addressed, and only address a violation of FINRA rules, cases of that hue are simply inapposite.

## 2. The Arbitrators Knew the Law, Understood It, Knew It Was Applicable, and Disregarded It

Once it is established that the law on the issue is clearly defined, the next step in the "manifest disregard of the law" analysis is to show that the arbitrators knew the law, understood it, knew it was applicable, and disregarded it. See Long John Silver's, 514 F.3d at 349; see also Raymond James Fin. Servs. v. Bishop, No. 3:07-cv-28, slip op. at 28 (E.D. Va. Dec. 18, 2008), aff'd, 596 F.3d 183 (4th Cir. 2010).

It is clear that the arbitrators knew the law because Interactive made clear in their briefing to the arbitrators that there was no private right of action for violation of FINRA rules.

31

See Raymond James, slip op. at 28 ("Raymond James correctly informed the panel of the principle in its Motion to Dismiss. . . ."). In both its pre-hearing brief before the arbitrators and its memorandum in support of its motion for summary judgment (ECF No. 31), Interactive cited clear authority establishing that there is no private right of action for violation of FINRA rules. See ECF No. 82 at 4-6 (discussing the two ways in which Interactive provided law to the arbitrators). The arbitrators were aware of the law cited in these briefs because they state that "they have each read the pleadings and other materials filed by the parties." ECF No. 71-1 at 2. Accordingly, the Court finds that the arbitrators were aware of the law.

Second, the arbitrators understood the law. This Court in Raymond James found that arbitrators understood the "causation element of a fiduciary damages claim" because the arbitrators were "licensed attorneys" and such knowledge is "hornbook law. . . required. . .for admission to the bar." Raymond James, slip op. at 29. As Interactive points out, the chairman of the arbitration panel here is an attorney and he stated that the panel members "are not uneducated or inexperienced jurists." ECF No. 82 at 6. In the Remand Opinion (ECF No. 50), the Court instructed that the arbitrators needed to make clear the predicate for liability. That damages must be tied to a recognized cause of action is "hornbook law." And, since at least one of the arbitrators is an attorney

and represented that the members of the panel are "not. . .inexperienced jurists," the Court finds that the arbitrators understood the law in this case.

Third, the arbitrators knew the law was applicable. Once again, the arbitrators had the benefit of this Court's Remand Opinion in which the Court instructed the arbitrators to tie damages to a cause of action. ECF No. 50 at 17. Further, the arbitrators acknowledged Interactive's position by stating in the "ARBITRATOR'S REPORT": "Respondent's position that the Panel should not enforce a FINRA rule amounts to saying that FINRA should provide an opportunity for investors to commit financial suicide. . . ." ECF No. 71-1 at 4. The arbitrators knew they had to tie the damages to a cause of action. They knew that Interactive's position was that there was no private right of action to enforce FINRA rules. They knew that the law applied to this case because they stated it in their "REPORT." On this record, the Court finds this element to be satisfied.

Finally, the arbitrators disregarded the law by finding Interactive liable solely on the basis of violating FINRA Rule 4210. They were aware of the law, understood it, and knew it was applicable to the case. After receiving clear guidance from this Court that they needed to establish a predicate for liability, the arbitrators doubled down by adding to their "REPORT" more language about violating FINRA rules rather than discussing one of the

claims for relief stated in the "CASE SUMMARY." See ECF No. 71-1 at 3-4. On this record, the Court has no choice but to find that the arbitrators utterly disregarded the law that FINRA rules provide no private case of action.[15]

---

[15] Claimants cite several cases to refute that the Court is able to determine from the face of the award that the panel acted in manifest disregard of the law. None of these cases support that proposition in this case. In Waveland Capital Partners, LLC v. Tommerup, 928 F. Supp. 2d 1227 (D. Mont. 2013), the Court rejected an argument that it could determine that the arbitrators based a finding of liability on "violations of self-regulatory organization rules." Id. at 1232. That case is different for two reasons. First, the arbitrators did not even address the self-regulatory organization (like FINRA) rules. Id. Second, the Court found several grounds upon which the arbitrators could have based their award. Id. at 1233. Neither of those situations are present here: the arbitrators expressly discussed a FINRA rule violation and the Court cannot find another basis for the finding of liability.

In The GMS Group, LLC v. Benderson, 326 F.3d 75 (2d Cir. 2003), the Second Circuit found that arbitrators did not act in manifest disregard of the law in applying NASD rules. But in that case, there was no written opinion by the arbitrators, id. at 81, and the Court determined that the facts and the law were unclear such that it could not say the arbitrators acted in manifest disregard of the law. Id. at 82-83. This case differs because the Court does have an opinion and the law is clear. Thus, the Court can determine that the arbitrators manifestly disregarded the law.

Lastly, Claimants cite two New York state cases. In a half-page opinion, a New York trial court rejected a challenge to an arbitration decision that "concerned the alleged breach of two rules of" NASD. Freeman v. Arahill, No. 111119/01 (N.Y. Sup. Ct. Oct. 18, 2001). It did so because Freeman did "not cite any case law for the proposition that a private right of action based on the violation of self-regulatory organization rules cannot be brought in arbitration." Id. While this statement cuts against the Court's determination here, the Court is not convinced by an unreasoned, half-page state trial court decision in the face of the other authority cited in this opinion. Claimants also cite In re Grace Fin. Group, LLC v. Dino, which upheld an arbitration award

In sum, the Court finds that the law applicable in this case is clearly defined—there is no private right of action for the violation of FINRA rules. The Remand Opinion put the arbitrators on notice that they were to tie their damages award to a cause of action. Rather than explaining which of the stated causes of action they relied on, they added more language about FINRA rule violations. In so doing, the arbitrators made it quite clear that liability was based solely on Interactive's violation of FINRA Rule 4210. Further, the arbitrators knew of the law, understood it, knew it to be applicable, and continued to disregard it. All of the elements for vacatur for manifest disregard of the law have been met. See Dancel, 792 F.3d at 402; Long John Silver's, 514 F.3d at 349. Accordingly, the PLAINTIFF'S MOTION TO VACATE MODIFIED ARBITRATION AWARD (ECF No. 79) will be granted.

## C. Interactive's Counterclaims

Before concluding, however, it is necessary briefly to address Interactive's counterclaims. During arbitration, Interactive asserted counterclaims against the Claimants for failure to mitigate and pay a debt. ECF No. 71-1 at 3. It requested dismissal of the Claimants' claims, compensatory damages of

---

as not manifestly disregarding the law where the award did not refer to FINRA rules, but rather characterized the claim as asserting "only excessive fees and mark-ups." 138 A.D. 3d 644, 645 (N.Y. App. Div. 2016). The Court implied, however, that if, like here, the arbitrators had sought to use FINRA rules to establish a private cause of action, the award would have been vacated. Id.

$220,172.09 from Rohit and Preya Saroop, compensatory damages of $166,087.53 from Dr. Sofis, interest, costs, and attorney's fees. Id. The "ARBITRATOR'S REPORT" briefly assesses Interactive's counterclaims: "Respondent's Counterclaim was dismissed based on Respondent's violation of FINRA Rule 4210 as further explained in FINRA Regulatory Notice 08-09." Id. at 4. Finally, in the "AWARD," the arbitrators denied Interactive's Counterclaims "[i]n their entirety," as well as denied Interactive's request for attorney's fees. Id. at 5 ¶¶ 8-9.

Because the Court has determined that it was manifest disregard of the law for the arbitrators to award damages to the Claimants based solely on the violation of FINRA Rule 4210, it was likewise improper to dismiss the counterclaim on this same ground. If FINRA Rule 4210 cannot support a finding of liability standing alone, neither can it provide a sort of affirmative defense that the arbitrators can use to reject Interactive's counterclaims.

But, given the difficulty that the arbitrators in this case had in following the Court's previous order (ECF No. 50) and their rather flagrant disregard of settled law in ruling against Interactive, the Court cannot in good conscience remit Interactive to the same panel of arbitrators for reconsideration of its counterclaims. See, e.g., Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1464 (11th Cir. 1997) (remanding to new panel of arbitrators where original panel was found to manifestly disregard

the law). Accordingly, the Court reinstates Interactive's counterclaims and remands to a FINRA arbitration panel with specific instructions that the counterclaims be considered by a different FINRA arbitration panel.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that the PLAINTIFF'S MOTION TO VACATE MODIFIED ARBITRATION AWARD (ECF No. 79) is GRANTED and the DEFENDANT'S MOTION TO CONFIRM THE MODIFIED ARBITRATION AWARD (ECF No. 80) is DENIED. Furthermore, it is hereby ORDERED that this matter is be remanded to a new panel of FINRA arbitrators for reconsideration of Interactive's counterclaims.

It is so ORDERED.

_____ /s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 18, 2018

37